**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JACQUELENE McKINNEY,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　Case No. 6:06-cv-1240-Orl-KRS

**ORANGE COUNTY, FLORIDA;**
**MARGARET PHIPPS; and GEORGE**
**HART,**

        **Defendants.**

_____

## ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**　　**DEFENDANTS' DISPOSITIVE MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (Doc. No. 42)**
>
> **FILED:**　　May 9, 2007

**I.  PROCEDURAL HISTORY.**

On August 18, 2006, Plaintiff Jacqueline McKinney filed a complaint against Defendants Orange County, Florida (County), Margaret Phipps and George Hart for constitutional violations arising from alleged harassment of her at work. Doc. No. 1. In Count I of her complaint, McKinney sought damages for the defendants' violation of her freedoms of speech and association, and her equal protection rights. *Id.* at 2. In Count II, she sought an injunction against the defendants for violating those same constitutional protections. *Id.* at 4.

The defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Doc. No. 34. The Court granted the motion to dismiss. Doc. No. 39. Count I was dismissed without prejudice to reassertion "consistent with the findings contained in this Order, on or before April 27, 2007." *Id*. Count II was dismissed with prejudice as moot. *Id*.

McKinney timely filed an amended complaint. Doc. No. 40. In addition to reasserting the constitutional claims presented in the original complaint (Count I), McKinney also asserted a claim for violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Count II). McKinney attached a copy of her right to sue letter from the Equal Employment Opportunity Commission in support of Count II. Doc. No. 41-2.

The defendants now move to dismiss Count I of the first amended complaint with prejudice as to all defendants, and to dismiss Count II of the first amended complaint with prejudice as to Phipps and Hart, and without prejudice as to the County. Doc. No. 42. McKinney has not responded to the motion to dismiss and the time for doing so has passed. Therefore, I construe the motion to be unopposed.

## II.   ALLEGATIONS OF THE FIRST AMENDED COMPLAINT.

McKinney was employed as a title examiner by the County in the Title Section of the Real Estate Management Division. Doc. No. 40 ¶ 3. McKinney worked under Phipps, a supervisor in McKinney's division, and Hart, the Manager of the Real Estate Management Division. *Id.* ¶ 4, 6. Phipps, Hart and other supervisors are Caucasian, and McKinney is African-American. *Id.* ¶ 7.

Phipps and Hart "continually and regularly harassed [McKinney], by taking actions including but not limited to the following:"

    a.      Intimidating and threatening [McKinney] with both verbal comments and nonverbal gestures;

    b.      Moving and concealing files in [McKinney's] possession, so that when [she] look[ed] for the files, they [were] missing;

    c.      Criticizing [McKinney's] work of which Defendants had previously approved, in order to harass [McKinney];

    d.      Inducing [McKinney's] co-workers to falsely complain about [McKinney's] conduct in her workplace;

    e.      Attempting to deny [McKinney] the use of her accumulated sick and vacation pay;

    f.      Publicly ridiculing, insulting, and humiliating [McKinney] for the sole purpose of harassing [her]; and,

    g.      Creating situations in which [McKinney] [could not] possibly fulfill the duties set out for [her], so that Defendants [could] then criticize [McKinney] for her nonfulfillment of those duties.

*Id*. ¶ 8.

Additionally, Phipps and Hart took "retaliatory measures" for McKinney's "casual, social interaction with co-workers[,] including but not limited to admiring another woman's flowers, or going to lunch off-site with a co-worker." *Id*. ¶ 9. The defendants "have taken similar actions against other African-American employees . . . [but] not against Caucasian employees." *Id*. ¶ 10.

In May 2006, McKinney met with Hart regarding Phipps. *Id*. ¶ 11. "Following this meeting, Defendants Phipps and Hart increased the frequency and intensity of the Harassment." *Id*. In June 2006, McKinney initiated an official investigation with the County's Office of Professional Standards. *Id*. ¶ 12. McKinney gave a sworn statement to an investigator. *Id*. Phipps and Hart "intimidated [McKinney's] immediate co-workers into failing to cooperate with the Investigation, and failing to report the Harassment." *Id*. ¶ 13. Phipps and Hart also "retaliated

-3-

against [McKinney] for initiating the Investigation by increasing the intensity and frequency of the Harassment." *Id*. ¶ 14.

After McKinney filed the original complaint in the present case, in August 2006, Phipps and Hart "increased still the intensity and frequency of the Harassment" to such an extent that McKinney "was forced to leave her position with the County on or about October 19, 2006." *Id*. ¶¶ 15, 16.

With respect to Count I, McKinney also alleges that the County "has maintained a policy, custom or practice of treating African-American employees differently from Caucasian employees who are in similar or same positions." *Id*. ¶ 19.  Hart "has final policymaking authority in the Real Estate Management Division regarding how the Real Estate Management Division manages its employees, and engages or fails to engage in harassment." *Id*. ¶ 20.

Phipps and Hart "were aware of and condoned, encouraged, participated in, and ratified the disparate treatment to African-American employees." *Id*. ¶ 21.  They also "made statements with racial undertones, which display racial prejudices." *Id.* ¶ 22. They also "were aware of and condoned, encouraged, participated in, and ratified the retaliation against [McKinney] for causing the Investigation." *Id*. ¶ 23.

The defendants' "actions created a hostile work environment" for McKinney, and caused "sufficient stress to undermine her health." *Id*. ¶¶ 24, 25.  Accordingly, McKinney seeks relief under 42 U.S.C. §§ 1983 and 1988 for violations of the First, Fifth, and Fourteenth Amendments to the United States Constitution. *Id.* ¶ 18.

With respect to Count II, McKinney alleges that in September 2006, she filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging discrimination and retaliation in violation of Title VII. *Id*. ¶¶ 27, 30. In February 2007, the EEOC issued a right-to-sue letter. *Id*. ¶ 28; doc. no. 41-2.

The County is an employer with over fifteen employees. *Id*. ¶ 31. The County, through Phipps and Hart, retaliated against McKinney for complaining about harassment and for initiating the internal investigation, for filing a charge with the EEOC, and for filing the complaint in this action. *Id*. ¶¶ 35–37. The County, through Phipps and Hart, "in its attempt to retaliate against [McKinney], evaluated [her] with increasing frequency, and found that [McKinney] failed to meet expectations with remarkable time coincidence with [her] initiation of the Investigation. Prior to [her] complaints, there was not a single indication that the County, Phipps, or Hart was dissatisfied with [McKinney's] job performance. The last day of [her] employment with the County, Phipps and Hart devised daily progress meetings for [McKinney]." *Id*. ¶ 38.

### III. STANDARD OF REVIEW.

In deciding a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). To satisfy the pleading requirements of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement showing an entitlement to relief, and must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). "While a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (internal citations omitted).[1]  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. (internal citations omitted).

**IV.   ANALYSIS.**

   *A.   Count I.*

The defendants argue that the complaint fails to state a claim under § 1983 for any violation of McKinney's constitutionally protected rights of freedom of speech, freedom of association, and equal protection; that Defendants Phipps and Hart are entitled to qualified immunity; and that McKinney has failed sufficiently to amend her complaint to address the deficiencies identified in the order dismissing the original complaint.

---

[1] As recently observed by the Second Circuit, "[c]onsiderable uncertainty concerning the standard for assessing the adequacy of pleadings has recently been created by the decision in *Bell Atlantic*." *Iqbal v. Hasty*, __ F.3d __, 2007 WL 1717803, at * 8 (2d Cir. June 14, 2007).  This is because much of the *Bell Atlantic* decision related to the specific antitrust context in which that case arose.  However, the Supreme Court also explicitly disavowed the previous standard of *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Considering various factors within *Bell Atlantic*, the Second Circuit concluded that "we believe the [Supreme] Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Id*., at *11.  The Eleventh Circuit has yet to apply the *Bell Atlantic* standard, and I find the Second Circuit's reading persuasive.

        1.      <u>Individual Liability and Qualified Immunity</u>.

Phipps and Hart contend that they are entitled to qualified immunity on McKinney's constitutional claims. Qualified immunity is an affirmative defense to a § 1983 action and may be raised at the motion to dismiss stage. *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001).

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The Supreme Court has set forth a two-part analysis for determining whether individual defendants violated clearly established rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As a threshold question, the court must first ask whether the facts alleged, taken in the light most favorable to the plaintiff, show that the government official's conduct violated a constitutional right. *Id.* If the complaint alleges the violation of a constitutional right, the court must determine whether that right was clearly established at the time of the violation. *Id.* Accordingly, the 12(b)(6) failure-to-state-a-claim analysis often overlaps with the qualified immunity analysis. *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998).

In "civil rights cases, especially those involving the defense of qualified immunity," the United States Court of Appeals for the Eleventh Circuit requires that "a § 1983 plaintiff allege with some specificity the facts which make out its claim." *Id*. at 1367.[2]

---

[2] McKinney conceded that this heightened standard applies in this case. Doc. No. 36 at 2.

### a.     **First Amendment Speech Rights**.

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1957 (2006). The first question in such cases is whether the employee spoke as a citizen on a matter of public concern. *Id*. at 1958. "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id*. If the answer is yes, the second question is "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id*.; *see also Anderson v. Burke County, Ga*, 239 F.3d 1216, 1220 (11th Cir. 2001) (asking whether the plaintiff's "First Amendment interests, as a citizen, in commenting upon matters of public concern outweigh the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.").

"Speech addresses a matter of public concern when the speech can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Fikes v. City of Daphne*, 79 F.3d 1079, 1083 (11th Cir.1996) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). "Whether the plaintiff's speech addressed a matter of public concern depends upon the content, form and context of the statement considered in light of the entire record." *Martinez v. City of Opa-Locka*, 971 F.2d 708, 712 (11th Cir. 1992). Purely personal matters do not raise issues of public concern. *See Connick*, 461 U.S. at 147 (holding that if the government employee speaks "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the

appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." ); *see also Anderson v. Burke County, Ga.*, 239 F.3d 1216, 1220 (11th Cir. 2001) (holding that internal employment issues "such as grievance procedures, vacation policies, promotion guidelines and pension benefits . . . relate to employment issues and just because they arise in a governmental office does not transform them into matters of public concern") (citations omitted); *Ferrara v. Mills*, 781 F.2d 1508, 1516 (11th Cir. 1986) ("[A] public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run.").

Speech made to an employer privately, such as in an internal grievance, still may be protected. *See Connick*, 461 U.S. at 148 n. 8; *see also Pattee v. Ga. Ports Auth.*, 477 F. Supp. 2d 1253, 1263 (S.D. Ga. 2006) ("Though the form of [the plaintiff's] speech was not a disclosure to the public, a disclosure of perceived governmental failures to an entity in a position to correct them is akin to a public disclosure.").

As discussed in the Order dismissing the original complaint, admiring another woman's flowers is not a matter of public concern. Doc. No. 39. Therefore, the Order cautioned that if McKinney "contends that some other expression, such as filing an internal grievance, is the protected speech, she must clearly articulate the facts surrounding the filing (including when the grievance was made, to whom it was delivered, whether it was made verbally or in writing, and the subject matter of the grievance)." *Id*. at 6-7.

Consistent with this Order, the first amended complaint includes additional allegations about the internal investigation. *See* Doc. No. 40 ¶¶ 11-16. These additional allegations clarify

that McKinney initiated the internal investigation with the County's Office of Professional Standards approximately three weeks after an unproductive meeting with Hart regarding Phipps and following alleged harassment by both Phipps and Hart. *Id*. ¶ 11. McKinney's co-workers did not cooperate with the investigation and failed to report harassment, allegedly because of intimidation by Phipps and Hart. Furthermore, Phipps and Hart increased the intensity and frequency of their harassment after McKinney initiated the investigation.

As an initial matter, the first amended complaint indicates that Phipps and Hart harassed McKinney before she filed the internal investigation. Any such harassment could not have been related to protected speech, because McKinney had not yet spoken by filing the grievance. However, based on a fair reading of the first amended complaint, the investigation related to the alleged harassment. Because it is conceivable that an exacerbation of harassment after McKinney filed the internal grievance could rise to the level of retaliation for that speech, I will address whether this speech related to a matter of public concern.

McKinney initiated the internal investigation after meeting with Hart about how Phipps allegedly was mistreating her, and followed alleged harassment by these defendants. This suggests that the internal investigation related to how McKinney was being treated by her supervisors, including both Phipps and Hart. There are no allegations that the internal investigation raised issues about other employees.[3] Therefore, the internal investigation appears related to McKinney's

---

[3] McKinney does not allege that the internal investigation related to the treatment of all African-American employees, which may qualify as a matter of public concern even if it also advanced McKinney's personal interests. Based on the heightened pleading standard applicable in individual liability cases under § 1983, absent a specific allegation, the Court is unwilling to assume that the internal investigation related to the treatment of all African-American employees.

personal interests in her employment environment and interactions with her supervisors. Even assuming that initiating the internal investigation was "akin to a public disclosure," *Pattee*, 477 F. Supp. 2d at 1263, because personal interests alone do not raise issues of public concern, the first amended complaint does not plausibly allege that McKinney spoke on a matter of public concern. Accordingly, any retaliation based on that speech does not create liability under § 1983.

### b.     First Amendment Association Rights.

The first amended complaint does not include any specific allegations about any infringement of McKinney's intimate or expressive association beyond those previously rejected. *See Cummings v. DeKalb County*, 24 F.3d 1349, 1354 (11th Cir. 1994). Rather, the first amended complaint maintains the allegations regarding the "casual, social interaction," doc. no. 40 ¶ 9, which is the type of "generalized social association" that is not protected by the First Amendment. *See City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989)(Freedom of association is defined as something more than "generalized . . . 'social association.'").

### c.     Equal Protection.

The first amended complaint does not cure any of the deficiencies previously identified regarding the alleged equal protection violations. Indeed, the allegations that Phipps and Hart "have taken similar actions against other African-American employees, whereas Defendants have not taken those actions against Caucasian employees," that Phipps and Hart "are known to make statements with racial undertones"; that Phipps and Hart "were aware of and condoned, encouraged, participated in, and ratified the disparate treatment of African-American employees"; and that the County "maintains a policy, custom, or practice of treating African-American

employees differently from Caucasian employees who are in similar or same positions"; all appeared in the original complaint in substantially the same form. *Compare* doc. no. 40 ¶¶ 10, 19, 21, 22 *with* doc. no. 1 ¶¶ 11, 12, 13, 14.  Moreover, there are no new allegations regarding potential equal protection violations.

Bare allegations that others were treated differently do not state an equal protection claim; "a complaint must attempt to show in some fashion that these 'other' [persons] were situated similarly to the plaintiff."  *GJR Invs., Inc.*, 132 F.3d at 1367-68.  Particularly in light of the heightened standard applicable in qualified immunity cases, the allegations regarding equal protection violations are insufficient.[4]

Based on the foregoing, the first amended complaint does not allege the violation of any constitutionally protected right.  Accordingly, the complaint fails to state a claim on which relief can be granted or that would overcome a qualified immunity defense.

    2.    Liability of the County.

The Supreme Court has held that "municipalities and other bodies of local government are 'persons' within the meaning of [§ 1983].  Such a body may therefore be sued directly if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or

---

[4] The allegation that the defendants "have taken similar actions against other African-American employees, whereas [the defendants] have not taken those actions against Caucasian employees," doc. no. 40 ¶ 10, appears to have as its antecedent the allegation that the defendants "have taken retaliatory measures . . . against [McKinney] for her casual, social interaction with co-workers including but not limited to admiring another woman's flowers or going to lunch off-site with a co-worker," *id*. ¶ 9.  For the reasons discussed elsewhere in this Order, admiring another woman's flowers or going to lunch with a co-worker are not constitutionally protected activities.  Therefore, even assuming that the defendants treated other African-American employees differently based on similar conduct, this is insufficient to allege a constitutional violation.  The other allegations are similarly vague and insufficient.

decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978)). "A plaintiff . . . has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Id*.

The question of who has final policymaking authority for a county is determined as a matter of state law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 737 (1989)(citing *Praprotnik*, 485 U.S. at 123). "Policymaking authority is not conferred by the mere delegation of authority to a subordinate to exercise discretion." *Wilson ex rel. Estate of Wilson v. Miami-Dade County*, No. 04-23250-CIV-MOORE, 2005 WL 3597737, at * 8 (S.D. Fla. Sept 19, 2005). Moreover, "[f]inal policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997); *see also Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1294 (11th Cir. 2000) ("The opportunity for meaningful review will suffice to divest an official of any policy making authority.").

For the reasons stated above, McKinney has failed to state a constitutional claim on which relief can be granted. Even assuming that the first amended complaint did sufficiently state a claim, McKinney's bare assertion that Hart "has final policy making authority in the Real Estate Management Division regarding how the Real Estate Management Division manages its employees, and engages or fails to engage in Harassment," doc. no. 40 ¶ 20, is insufficient to establish municipal liability. This is because even if Hart has supervisory authority over one

-13-

division, the first amended complaint does not plausibly allege that Hart has policymaking authority for the County. Furthermore, the fact that Hart was subject to review by the Office of Professional Standards undermines any conclusion that he had final policymaking authority. Finally, by failing to respond to the present motion to dismiss, McKinney did not avail herself of the opportunity to identify any state law that would vest Hart with such authority. Thus, the first amended complaint does not sufficiently plead a claim for municipal liability.

        3.      <u>Dismissal With Prejudice Is Appropriate</u>.

For the foregoing reasons, Count I of the first amended complaint is due to be dismissed. All defendants request that the § 1983 claims be dismissed with prejudice. "Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice. A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (internal citations, quotations, and alterations omitted).

While the Court cannot conclusively determine that amendment would be futile, McKinney already has been given one chance to amend the complaint. For the reasons set out above, her amendments were insufficient to state a claim upon which relief could be granted under § 1983 or that would overcome a qualified immunity defense. Also, McKinney has not responded in opposition to the present motion to dismiss, despite the fact that the defendants clearly sought

dismissal with prejudice. Therefore, considering the factors set out above, it is appropriate to dismiss Count I with prejudice as to all defendants.

> B.   *Count II.*

The defendants argue that amendment of the complaint to include the previously unasserted Title VII claim was improper. As grounds for this argument, they cite the Amended Case Management and Scheduling Order in this case, which set March 2, 2007, as the deadline for filing amended pleadings. Doc. No. 32. They further argue that even though the Order dismissing the original complaint gave McKinney until April 27, 2007, to file an amended complaint, that Order permitted amendment "consistent with the findings contained in this Order," and by implication did not permit the addition of new claims.

Generally, Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." "Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Id*.

Inasmuch as the defendants have not yet answered, there has been no responsive pleading filed in this case. *See* Fed. R. Civ. P. 7(a)-(b) (pleadings include the complaint and answer, and are distinguished from motions). As such, McKinney would normally be entitled to file an amended complaint once as a matter of right. While the amended complaint was filed outside the time set in the Amended Case Management and Scheduling Order, it was filed within the time permitted by my previous Order. Doc. No. 39. Therefore, the amendment was timely. Moreover, the defendants were aware of the possibility that McKinney would amend her complaint to include

a Title VII claim from at least as early as the submission of the Case Management Report.  *See* Doc. No. 28 at 2.  Therefore, any assertion of prejudice is unpersuasive.

Phipps and Hart argue that they are not proper defendants to a Title VII claim.  The Eleventh Circuit has concluded that "a Title VII claim may be brought against only the *employer* and not against an individual employee." *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (citing *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)).  Because the employer in this case was the County, Title VII liability may not lie against Phipps and Hart individually.  Therefore, Count II is due to be dismissed with prejudice as to them.

The County argues that, in the event the Court considers the amendment timely, that the complaint be dismissed without prejudice as to it because Count II fails sufficiently to allege that McKinney has suffered any adverse employment action by the County, that Count II fails sufficiently to allege the elements of a hostile work environment claim, and for other deficiencies.

Based on the results reached above, it is appropriate to require McKinney to file a second amended complaint setting out only the Title VII claim against the County.  The sufficiency of the second complaint is more properly addressed after it is filed.

**V.   CONCLUSION.**

For the foregoing reasons, Defendants' Dispositive Motion to Dismiss Plaintiff's Amended Complaint, doc. no. 42, is **GRANTED**.  It is **ORDERED** that Count I of the First Amended Complaint, doc. no. 40, is dismissed with prejudice as to all defendants. It is further **ORDERED**

that Count II of the First Amended Complaint is dismissed with prejudice as to Phipps and Hart, and dismissed without prejudice as to the County.

It is further **ORDERED** that McKinney shall have until August 10, 2007, to file an amended complaint setting out a Title VII claim against the County.[5] McKinney is cautioned that failure to file a legally sufficient complaint within the time permitted by this Order will likely result in the dismissal of this case without further leave to amend.

**DONE** and **ORDERED** in Orlando, Florida on July 20, 2007.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[5] Because the discovery deadline in this case is currently set for August 1, 2007, the Court will enter an amended case management and scheduling order upon motion after the sufficiency of the second amended complaint is determined and an answer is filed.